Filed 3/4/22  P. v. Fawcett CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARK RANDALL FAWCETT, <br><br> Defendant and Appellant. | F078256 <br><br> (Super. Ct. No. 18CR02358) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Donald E. Shaver, Judge.*

Jennifer Mouzis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Marcia A. Fay and Jamie A. Scheidegger, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

---

*Retired Judge of the Stanislaus Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# INTRODUCTION

A court clerk reported defendant Mark Randall Fawcett to court security after he passed her and another court clerk in front of the courthouse, threatened to blow up the building, and told them "to try and have a nice day." Defendant was apprehended outside of the police department, which was near the public defender's office. Defendant was subsequently charged with threatening state officials (Pen. Code, § 76, subd. (a); count 1), criminal threats (§ 422, subd. (a); count 2), resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1); count 3), and disobeying a court order (§ 166, subd. (a)(4); count 4). (Undesignated statutory references are to the Penal Code.) A jury convicted defendant of counts 1, 2, and 4. In a bifurcated proceeding, defendant admitted a prior prison term enhancement. The court sentenced defendant to the upper term of three years' imprisonment on count 2 and stayed a three-year upper term sentence on count 1 and a six-month jail term as to count 4. The court also imposed the one-year prior prison term enhancement for an aggregate sentence of four years.

Defendant challenges his convictions, arguing his counsel was ineffective in failing to seek recusal of the district attorney's office from his case. He also argues insufficient evidence supports his convictions of counts 1 and 2. He further contends his counsel was ineffective in failing to move to dismiss count 4. Finally, he asserts his prison prior enhancement must be stricken pursuant to Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), and he is entitled to a remand for resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).

We conclude Senate Bill 567 entitles defendant to a remand for resentencing and Senate Bill 136 requires his prison prior enhancement to be stricken. In all other respects, we affirm the judgment.

# FACTUAL BACKGROUND

***Prosecution Evidence of May 17, 2018, Incident***

Courtroom clerks Robyn Baptista and Laura Parmenter were walking toward the Merced courthouse employee entrance on the morning of May 17, 2018. As they approached to swipe their badges, a black car pulled up in the alleyway right next to the entrance. Baptista identified defendant as the driver; she testified he started yelling things at them Baptista did not understand at first. Then she heard defendant say, "'I'm going to blow up this building, but try to have a nice day.'" "It was … shocking in the moment." Baptista was scared and upset for the rest of the day; she testified she was shaking. Parmenter also heard defendant say, "'I'm going to blow this building up. Try to have a nice day.'" She also felt scared. Due to the nature of where they worked—a court—they both took the threat seriously. Parmenter testified defendant's comments appeared to be directed towards her and Baptista. Defendant continued to yell things they could not understand and then he drove into a parking lot, stopped again, and screamed, "'You Morse[1] whores, you like it long and deep.'" Baptista and her coworkers walked into the building and Baptista immediately went to the dispatch window and reported defendant's threat to blow up the building. Baptista testified she was dressed in professional attire. She explained she thought when defendant made the threat that he could follow up with it because she was "well aware" of him in that she had seen him in court before. Parmenter also believed she had seen defendant in court before.

The prosecution introduced a video recording depicting the events that occurred outside of the courthouse that day at 7:57 a.m. Baptista identified a car in the video as defendant's car. She explained to the jury the point in the video when defendant was yelling out of his window at her and her coworkers.

---

[1]At that time, Larry Morse was the Merced County District Attorney.

Courtroom clerk Bianca Hernandez also recalled approaching the court's employee entrance that same morning. She was walking alone but there were several people in front of her. She saw a black car approaching that was going the wrong way down a one-way alley. She identified defendant as the driver at trial and testified he was yelling angrily. She could not decipher what defendant was saying until he pulled into a parking lot; then she heard him call them "whores" and say, "'You like it long and hard from Larry Morse.'"

Deputies Jesse Meraz and Michael Burdick were by the dispatch office that day when Baptista reported defendant had threatened to blow up the building. Meraz and Burdick got in their marked patrol car and drove through the parking lot. They saw defendant walking across the street towards the police department. Defendant stopped before getting to the door to the police department, turned around, and walked back towards his car, which was in the direction of Meraz and Burdick. Burdick testified defendant was holding the door handle of the Merced Police Department looking right at them at one point. Meraz recognized defendant. Defendant got in his car and Meraz advised Burdick to position their car in front of defendant's so they could speak to him. Meraz and Burdick then exited their car and ordered defendant to show them his hands. Meraz told defendant to park his car, drop whatever he was holding, and exit the car. Defendant said, "'This is a cite and release.'" Meraz understood that phrase to mean something that is not a "jailable offense"; rather, the person will "receive a citation and be released on the scene." According to Meraz, defendant seemed distraught and agitated, and he became more agitated as a sergeant arrived. Defendant began loudly cursing at the deputies.

At some point the deputies realized defendant was in violation of a court order that prohibited him from being anywhere within 200 feet of the public defender's office. Though defendant was struggling and not complying, Deputies Meraz and Burdick managed to handcuff him. Meraz testified defendant's actions delayed or obstructed his

4.

attempt to place defendant in handcuffs. The officers put defendant in the back of a patrol car and defendant started pounding on the door.

Deputy Meraz had encountered defendant on other occasions. He had previously responded to a panic alarm that was sounded because defendant was being upset and loud in the court; the court had issues with defendant being verbally abusive to court staff in the past as well. Meraz and another deputy escorted defendant out. Meraz had heard defendant "talk about his old cases and how he was done wrong by the Public Defender's Office, the DA's Office."

### Evidence of Uncharged Act

The prosecution also introduced evidence of uncharged acts by defendant on the issue of defendant's intent. Cherie Mendenhall, who worked for the Merced County Public Defender's Office, testified defendant had previously come into the office several times and made threatening remarks. She discussed an incident in June or July of 2017 during which defendant came in and said he wanted to talk to Todd McLean, a public defender who had previously represented defendant. When Mendenhall informed defendant McLean was unavailable, defendant became aggressive and told her to tell McLean "he better watch his back, that he was going to get stabbed." In a second incident, defendant told Mendenhall "he was going to pay Mr. McLean back for what he had done." Mendenhall interpreted what defendant said as threats.

Deputy District Attorney Travis Colby testified regarding an incident that occurred outside of the courthouse in November 2017. Defendant approached Colby and asked if he remembered him; Colby had prosecuted a case against defendant in the Los Banos office. When Colby realized who defendant was, he told defendant he could not speak to him without his attorney present. Defendant was agitated and demanded Colby speak with him. When Colby tried to walk away, defendant mirrored his movements and walked in front of him, blocking him. At some point defendant told Colby he was "going

to get [him]" and he was "going to have [his] law license." Colby was concerned for his safety; he did not want it to become a physical altercation.

***Defense Evidence***

Defendant testified on his own behalf. On the morning of the incident giving rise to the charges, he was driving a black Honda Civic near the Merced County Courthouse. He had time off and wanted to go "to the police station in order to run things over with the police" and get guidance on some legal affairs. He drove down the alley by the courthouse, rolled down his passenger side window, and yelled profanities at strangers; he said, "Fuck you, bitches, you like it … long and hard for him, Larry Morse," or something to that effect. However, he denied making a threat or saying he was going to blow up the building. He testified he meant what he yelled out the window "as a joke"; he did not feel like he did anything wrong. He also denied recognizing the courtroom clerks who testified. He explained he was agitated the morning of the incident because he was having a legal problem with his family and felt "it was totally mishandled by the legal system." He acknowledged the existence of a restraining order against him and testified he tried "to avoid breaking [it] the best [he] can."

After driving down the alley, defendant parked across from the police station. He then noticed a sheriff's deputy car pass, which made him nervous because he thought he "might be in trouble again." When he saw the deputies approach, he "got scared and hopped out of [his] vehicle, tried to go to the police station." He recalled the officers telling him to step out of the car, put down his phone, and place his hands behind his back; defendant believed he complied with the directives. Defendant did not think he tried to prevent the officers from handcuffing him. He testified he was scared and had no problem with getting in the car when they told him to. Defendant assumed he was in violation of the restraining order that was issued a month before the incident. This is why he kept stating, "This is a cite and release."

6.

On cross-examination, defendant stated he believed there was a conspiracy going on regarding his other legal matter. He explained he was upset by Todd McLean's previous representation of him and was agitated when he went to the public defender's office. But the testimony that he threatened McLean was a lie. Specifically, he denied saying "'Mr. McLean better watch his back because that's how people get stabbed'" when he went to the public defender's office. Defendant also testified about the incident Travis Colby discussed that occurred in front of the courthouse. Defendant did not recall exactly what he said but testified, if he said he was going to get Colby and his law license, he meant he was going to get Colby's law license, not a criminal threat.

*Charges and Verdict*

In connection with the May 17, 2018, incident, defendant was charged with threatening a public official, namely court clerks Laura Parmenter and Robyn Baptista, with the intent the statement be taken as a threat and with the apparent ability to carry out the threat (§ 76, subd. (a); count 1), criminal threats against Laura Parmenter and Robyn Baptista (§ 422, subd. (a); count 2), resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1); count 3), and disobeying a court order (§ 166, subd. (a)(4); count 4).

A jury convicted defendant of counts 1, 2, and 4, but could not reach a verdict on count 3, which the prosecutor dismissed on his own motion. In a bifurcated proceeding, defendant admitted a prior prison term enhancement. The court sentenced defendant to prison for the upper term of three years on count 2 plus one year for the prison prior enhancement and stayed a three-year upper term on count 1 and a six-month jail term as to count 4.

**DISCUSSION**

**I.** **Counsel Was Not Ineffective in Failing to Seek Recusal of the District Attorney's Office**

Defendant first asserts the district attorney had a disabling conflict that should have been apparent to his counsel such that his counsel provided ineffective assistance by failing to seek recusal of the district attorney's office. We disagree.

**A.** **Relevant Procedural History**

During a pretrial hearing, defense counsel stated: "I would … think that if the District Attorney's office is a protected victim in a restraining order they probably have a conflict of interest in terms of prosecuting this case and maybe the Court ought to assign the case to the Attorney General's office for prosecution." The court responded, "Well, that's, of course, not a decision I make on my own without a motion being filed. I'll leave that up to the DA's office." Defense counsel asked the court to set another pre-preliminary hearing the following week because his "office may be filing a motion to recuse the District Attorney's office, that's something that needs to be looked at." The court set the matter for another hearing the following week. Defense counsel then made an informal request for discovery of all restraining orders that had been served on defendant including the one protecting the district attorney's office. The prosecutor agreed to produce them, and defense counsel confirmed he had the police reports. At the next hearing, there was no further discussion of a motion to recuse.

**B.** **Standard of Review**

"To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish prejudice, a defendant must show a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant. (*Id.* at p. 694.)" (*People v. Hinton* (2006) 37 Cal.4th 839, 876.)

We "'"'defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" [Citation.] "[W]e accord great deference to counsel's tactical decisions" [citation].'" (*People v. Hinton*, *supra*, 37 Cal.4th at p. 876.) "'"[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.]' [Citation.]" (*Ibid.*)

## C. Applicable Law

A motion to recuse the district attorney "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." (§ 1424, subd. (a)(1).) "'The statute "articulates a two-part test: '(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?'"'" (*People v. Bell* (2019) 7 Cal.5th 70, 97; accord, *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) A "conflict" exists, under section 1424's first prong, whenever there is "'"a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner."'" (*Bell*, *supra*, at p. 97; accord, *People v. Eubanks* (1996) 14 Cal.4th 580, 592.) "But recusal is not required unless, under the second prong, the possibility of unfair treatment 'is so great that it is more likely than not the defendant will be treated unfairly during some portion of the criminal proceedings.'" (*Bell*, *supra*, at p. 97; accord, *Haraguchi*, *supra*, at p. 713.)

"'[A] motion to disqualify a prosecutor must be based upon a likelihood of unfairness and not upon mere speculation.'" (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 107–108; see *Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 719 [reiterating it is "an *actual likelihood of unfair treatment*, not a subjective perception of impropriety" that can warrant significant step of recusal].) "Recusal of an entire district

attorney's office is an extreme step." (*People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1481; see *People v. Petrisca* (2006) 138 Cal.App.4th 189, 195.) Thus, "'[d]isqualification of an entire prosecutorial office from a case is disfavored by the courts, absent a substantial reason related to the proper administration of justice.'" (*People v. Petrisca*, *supra*, at p. 195; see *People v. Hernandez* (1991) 235 Cal.App.3d 674, 679–680.) "The showing of a conflict of interest necessary to justify so drastic a remedy must be especially persuasive." (*Petrisca*, at p. 195; *Hernandez*, at p. 678.)

The trial court's decision on a motion to recuse the prosecutor is reviewed for abuse of discretion. (*People v. Bell*, *supra*, 7 Cal.5th at p. 97; *Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 711.) "The trial court's factual findings are reviewed for substantial evidence, and its application of the law will be reversed only if arbitrary and capricious." (*Bell*, *supra*, at p. 97; *Haraguchi*, *supra*, at pp. 711–712; *People v. Vasquez* (2006) 39 Cal.4th 47, 56.)

### D.     Analysis

Defendant argues the district attorney's office, its deputies, and the front desk clerk were "victims" of defendant's prior harassment and threats and were named in a workplace restraining order against defendant. Additionally, the named victim of defendant's uncharged acts, Travis Colby, testified in this case and there was evidence he shared his experiences and concerns about defendant with fellow deputies, district attorney investigators, and court security officers. Defendant argues "the conflict was apparent from the beginning of the case," and his counsel "should have sought recusal of the District Attorney in favor of a more neutral and objective prosecuting agency such as the Attorney General's Office." He contends the decision to charge him with violations of sections 76 and 422 rather than a violation of section 148.1, subdivision (c) was an abuse of the district attorney's discretionary charging function. He also asserts the prosecutor refused to engage in plea negotiations or make an offer in this case. Relying on *People v. Conner* (1983) 34 Cal.3d 141 and *Lewis v. Superior Court* (1997) 53

Cal.App.4th 1277, defendant argues recusal was supported. He argues there was no reasonable explanation for his counsel to fail to bring a motion to recuse. He further contends his counsel's failure to move for recusal of the district attorney's office resulted in prejudice that is "unquantifiable," impacting his constitutional due process rights. Accordingly, he argues we should evaluate prejudice under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24.

The People respond counsel was not ineffective because the record supports an inference defense counsel decided not to file a motion to recuse for tactical reasons, or because it had no merit. They contend a recusal motion "had no merit because no conflict made it unlikely that [defendant] would receive fair treatment." They argue the "public defender's office, not Mr. Colby or the district attorney's office, was the 'victim' of the restraining order violation" in this case. They note Colby testified in this case regarding defendant's prior uncharged act, but he did not handle defendant's current prosecution. The People also assert there was no evidence the alleged conflict spread to everyone in the district attorney's office. Finally, they argue defendant has not established prejudice.

We conclude defendant fails to establish his claim of ineffective assistance of counsel.

On direct appeal, when no explanation for counsel's conduct can be found in the record, "we must reject the claim [of ineffective assistance of counsel] unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212; accord, *People v. Hernandez* (2004) 33 Cal.4th 1040, 1053.)

Counsel in this case was not asked for an explanation regarding why he did not move to recuse the Merced County District Attorney's Office. And it is possible counsel's failure to file such a motion was a tactical decision because he did not believe such a motion had merit. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463

11.

["Representation does not become deficient for failing to make meritless objections"]; *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161–1165; accord, *People v. Snow* (2003) 30 Cal.4th 43, 95 [consideration of ineffective assistance of counsel claim reserved for habeas corpus writ where record does not reveal whether counsel had legitimate tactical reason for litigation choice]; *People v. Jones* (2003) 29 Cal.4th 1229, 1263 ["As the record on appeal does not reveal why defense counsel chose not to object …, this ineffective assistance of counsel claim would be more appropriately raised in a habeas corpus petition"].)

Notably, the district attorney's office was not a victim of the charged conduct in this case. (Cf. *Lewis v. Superior Court*, *supra*, 53 Cal.App.4th at p. 1283 [office of district attorney was a "direct victim of the losses resulting from the county's bankruptcy, and thus, of petitioner's alleged misconduct"]; *People v. Conner*, *supra*, 34 Cal.3d at pp. 144, 148 [recusal of entire district attorney's office supported because deputy district attorney "was both a witness to, and arguably a victim of, the criminal conduct giving rise to the offenses for which defendant [was] being prosecuted" and he communicated "his harrowing experience" and "emotional involvement … to his fellow workers"].) Rather, the alleged conflict of interest arose from defendant's past uncharged conduct against Travis Colby, and the restraining order that lists Colby as a protected party. However, there was no evidence Colby influenced or was behind the prosecuting attorney's decisionmaking in this case. (See generally *People v. Breaux* (1991) 1 Cal.4th 281, 294–295 [affirming denial of recusal motion where prosecutor's wife and victim were acquaintances and part of same social club but prosecutor had no relationship to victim or personal interest in case and evidence failed to show any connection which justified an inference of bias by the office or prosecutor]; *Melcher v. Superior Court*

12.

(2017) 10 Cal.App.5th 160, 163, 166–168 [mere fact victim and district attorney are married does not establish disabling conflict where there is no evidence the victim has influenced the prosecution, an ethical wall prevents the district attorney from influencing the case, and the district attorney waives any rights to participate in the case as a victim or a member of the victim's family].)

Additionally, defendant's contention the alleged conflict of interest pervaded the entire Merced County District Attorney's Office such that it was unlikely he would receive fair treatment is not supported by the record before us.[2] Rather, his contention is based upon speculation.[3] Indeed, it is possible defense counsel received assurance Colby was "walled off" from the case. Accordingly, defense counsel could have reasonably concluded a motion to recuse would have been futile.

We further note recusal was not required simply because Colby appeared as a witness at trial. (See *People v. Snow*, *supra*, 30 Cal.4th at pp. 85–87 [affirming denial of motion to recuse, rejecting argument "camaraderie" in district attorney's office established case could not be prosecuted in even-handed manner because two deputy

---

[2]Notably, defendant argues "the County sought a workplace violence restraining order to protect the entire [district attorney's] office from [defendant's] harassment of staff there." However, contrary to defendant's contention, only Deputy District Attorney Colby and Deputy Public Defenders McLean and Jamieson—not the entire district attorney's office—are listed as protected parties in the workplace restraining order.

[3]In a separate "Request for Judicial Notice," filed with our court, defendant asks us to take judicial notice of the comparable size of the Merced County District Attorney's Office pursuant to Evidence Code section 451, subdivision (f). The People oppose defendant's request for judicial notice on the grounds such information was not presented to the trial court and would be more appropriately presented in a writ of habeas corpus, not on direct appeal.

We decline defendant's request because this information was not presented to the trial court in the first instance. (See *People v. Hardy* (1992) 2 Cal.4th 86, 134 ["'[A]s a general rule the [appellate] court should not take … [judicial] notice if, upon examination of the entire record, it appears that the matter has not been presented to and considered by the trial court in the first instance'"]; see *People v. Preslie* (1977) 70 Cal.App.3d 486, 493 [same]; see also *People v. Sanders* (2003) 31 Cal.4th 318, 323, fn. 1 [declining to take judicial notice of documents that were not before trial court].) Rather, defendant's claim is more appropriately reserved for a petition for a writ of habeas corpus.

district attorneys testified but were not involved in prosecution]; *People v. Vasquez*, *supra*, 39 Cal.4th at p. 58, fn. 3 [fact that defense intended to call deputy district attorney as a witness did not itself require office's disqualification]; *People v. Merritt* (1993) 19 Cal.App.4th 1573, 1580 ["merely because an employee may be a potential witness and credibility of that witness may have to be argued by the prosecuting attorney, there is no sufficient basis for that reason alone to recuse an entire prosecutorial office"].)

We also cannot conclude defendant has made an affirmative showing of prejudice. That is, we cannot conclude he has established it is reasonably probable he would have obtained a more favorable result if his counsel had filed a motion to recuse the entire Merced County District Attorney's Office, the motion would have been granted, and he would have received a more favorable verdict as a result of different charges. As discussed, the record before us does not establish the prosecuting attorney in this case had a disabling conflict of interest or that Travis Colby's alleged conflict necessarily extended to him. And, in the absence of affirmative evidence the case was prosecuted in an unfair way, we will not speculate the prosecutor did not exercise his discretion in an evenhanded manner or that personal animus or bias played any role in defendant's prosecution.

Because the record fails to establish defendant was prejudiced by his counsel's failure to file a motion for recusal, defendant has not met his burden of establishing ineffective assistance, and his contention is rejected.

## II. Sufficient Evidence Supports Defendant's Convictions of Counts 1 and 2

Defendant next asserts insufficient evidence supports his convictions for threatening a government official, count 1, and criminal threats, count 2. We disagree.

### A. Standard of Review

On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) The reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis … is there sufficient substantial evidence to support"' the jury's verdict." (*Ibid*.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Ibid*.) "'''[A]lthough an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'''" (*People v. Dalton* (2019) 7 Cal.5th 166, 209.)

**B.      Threatening a Public Official in Violation of Section 76**

We first reject defendant's argument insufficient evidence supports his conviction of count 1.

*1.      Applicable Law*

Section 76 criminalizes threatening certain public officials, appointees, judges, staff or their immediate families, providing in relevant part as follows:

> "Every person who knowingly and willingly threatens the life of, or threatens serious bodily harm to, any elected public official, county public defender, county clerk … or the staff … of any elected public official, county public defender, county clerk … with the specific intent that the statement is to be taken as a threat, and the apparent ability to carry out that threat by any means, is guilty of a public offense …." (§ 76, subd. (a).)

For purposes of that section "'[t]hreat' means a verbal or written threat … made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety …."  (§ 76, subd. (c)(5).)  "As for threats against staff …, the threat must relate directly to the official duties of the staff of the elected public official, county public defender, county clerk …." (*Id.*, subd. (d).)

Here, the jury was instructed with CALCRIM No. 2650 regarding a violation of section 76.  It instructs a defendant is guilty of this crime if the People prove:

> "1. The defendant willingly (threatened to kill/ [or] threatened to cause serious bodily harm to) (a/an) _____ *<insert title of person specified in Pen. Code, § 76(a)>* …;

> "2. When the defendant acted, (he/she) intended that (his/her) statement be taken as a threat;

> "3. When the defendant acted, (he/she) knew that the person (he/she) threatened was (a/an) _____ *<insert title of person specified in Pen. Code, § 76(a)>* …;

> "4. When the defendant acted, (he/she) had the apparent ability to carry out the threat;

> "[AND]

16.

"5. The person threatened reasonably feared for (his/her) safety …(;/.)

"<*Give element 6 if directed at a person specified in Pen. Code, § 76(d) or (e).*>

[AND

"6. The threat was directly related to the _____'s <*insert title of person specified in Pen. Code, § 76(d) or (e)*> performance of (his/her) job duties."

### 2. Analysis

With regard to his conviction for threatening a public official in violation of section 76 (count 1), defendant argues he had "no reason to know [Robyn Baptista and Laura Parmenter] were court clerks, and he had no known quarrel with the court staff." He also contends the "People could not show the threat was to these clerks personally." Instead, he contends "[t]he fact that these clerks work in a building [he] allegedly threatened to 'blow up,' does not make them victims of a threat within the meaning of section 76 where they were not personally targeted, but just happened to be two of several clerks who overheard [him] yelling from his car as he drove past the employee entrance." He also argues the evidence did not support a conclusion he made the threatening statement with the intent to instill fear in the court clerks. He asserts "it is unreasonable to infer that [his] alleged statement 'I'm gonna blow up the place' had the 'unequivocal, unconditional, immediate and specific' connotation so as to be deemed a true threat within the meaning of the statute." We conclude sufficient evidence supports this conviction.

#### (a) Sufficient evidence supports the jury's conclusion defendant threatened the court clerks

Here, there was sufficient evidence from which the jury could conclude defendant threatened Baptista and Parmenter who he knew to be court clerks. Defendant admitted he was angry and frustrated with the legal system the morning of the incident giving rise to the charges. He approached the clerks, who were professionally clad and entering the

17.

courthouse employee entrance, and threatened to blow up the courthouse. He was only about 20 feet away from them when he yelled the threat. Baptista and Parmenter both took the threats seriously and Parmenter expressly testified she believed defendant's statements were directed at them.

And we reject defendant's contention that defendant's threat was a threat to the building and could not be considered directed at the clerks. Rather, it was reasonable for the jury to conclude defendant's threat to blow up the building the clerks were entering and where they worked was a threat to the clerks' physical safety.

Furthermore, though defendant denied recognizing the clerks when they took the stand, he himself acknowledged he was sure a lot of people recognized him outside the courthouse because he had "gotten paperwork in there," he "know[s] some people," and "recognize[s] people" who he has worked with there. Furthermore, in his comments directed at the clerks, he called the women "Morse whores," referring to then Merced County District Attorney, Larry Morse, suggesting he associated the women with the district attorney. Though defendant denied knowing Baptista and Parmenter personally, he did not deny directing his comments toward them or that he knew they were court staff. Such evidence viewed in the light most favorable to the verdict supports the jury's conclusion defendant had the requisite knowledge Baptista and Parmenter were court clerks.

Defendant argues the People's argument he knew Baptista and Parmenter were court staff stemmed from their testimony they recognized defendant. He asks us to take judicial notice of his prior cases to show his previous proceedings were in a different courthouse. He asserts this is a "rare case when the testimony of two witnesses was 'demonstrably false' with respect to their having recognized [defendant] from prior court cases because … [defendant's] prior criminal cases were heard in Los Banos, and neither of these clerks was assigned to any of the proceedings in those matters …." He further contends his counsel was ineffective for failing to impeach Baptista and Parmenter with

18.

the records of his prior cases to discredit their claim they had served as clerks on his cases.

First, for the reasons previously discussed, we decline to take judicial notice of this information, which was not presented to the trial court in the first instance. (See *People v. Hardy*, *supra*, 2 Cal.4th at p. 134; *People v. Preslie*, *supra*, 70 Cal.App.3d at p. 493.) Irrespective, neither clerk testified they were previously assigned to one of defendant's cases.[4] Rather, they testified they believed they had seen him at the court before. Thus, we also cannot conclude defense counsel was ineffective in failing to impeach Baptista or Parmenter with the records from defendant's other cases.

It is true that "a defense attorney who fails to investigate potentially exculpatory evidence, including evidence that might be used to impeach key prosecution witnesses, renders deficient representation." (*In re Edward S.* (2009) 173 Cal.App.4th 387, 407.) But, "'[t]he failure to impeach a witness or to object to evidence are matters which usually involve tactical decisions on counsel's part and seldom establish a counsel's incompetence…. "'In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the [trier of fact's] apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel….'"'" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140, quoting *People v. Frierson* (1979) 25 Cal.3d 142, 158.)

Here, defense counsel was not asked why he did not impeach the clerks with such evidence, and this is not a situation where there could be no possible reason. Rather, as discussed, the clerks did not testify they recognized defendant from working on his cases. They testified they had seen him at the court. Thus, defense counsel could reasonably have concluded evidence of where defendant's prior cases were adjudicated did not impeach or discredit Baptista or Parmenter's testimony or establish it was "demonstrably

---

[4]Laura Parmenter testified she did not know whether she had clerked on one of defendant's cases though the chances were "pretty good."

false."  Accordingly, we cannot conclude counsel was deficient in failing to impeach them on this basis.  For the same reason, we cannot conclude it is reasonably probable defendant would have obtained a more favorable verdict had counsel tried to impeach the clerks on this basis.

> **(b)** **A rational trier of fact could have found beyond a reasonable doubt the evidence established defendant acted with the requisite intent**

There is also sufficient evidence defendant intended Baptista and Parmenter to take his statement as a threat.  A threat under the statute includes a threat implied by a combination of verbal statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety.  (§ 76, subd. (c)(5); accord, *People v. Barrios* (2008) 163 Cal.App.4th 270, 277–278.)  "'[S]pecific intent may be, and usually must be, inferred from circumstantial evidence.'"  (*People v. Davis* (2009) 46 Cal.4th 539, 606; see *People v. Cole* (1985) 165 Cal.App.3d 41, 48.)

Here, defendant admitted he was "mad at the court system" and "the individuals involved and some of the agencies involved."  He drove slowly down the alley and yelled out his open window at Baptista and Parmenter that he was going to blow up the building as they were about to enter it.  He also stated, "'but try to have a nice day,'" after making the threatening statement.  The prosecution also introduced evidence of defendant's prior threat to Deputy District Attorney Travis Colby.

Viewing such evidence in the light most favorable to the verdict, we find the jury could have reasonably concluded defendant intended his statement that he was going to blow up the building to be taken as a threat.  (See *In re A.G.* (2020) 58 Cal.App.5th 647, 655 [though juvenile contended post was joke, sufficient evidence established he intended Snapchat image as threat where he was holding a gun and wrote "'Everybody go to school tomorrow.  I'm taking gum [*sic*]'" and posted to see others' reactions]; *People v. Jackson* (2009) 178 Cal.App.4th 590, 594, 600 [concluding sufficient evidence

20.

established defendant intended his statement he would "'blow [the victims'] heads off'" to be a threat where the defendant "ranted and raved in an angry way" and "[he] was behaving erratically so that the victims did not know what he was going to do next," reversing on other grounds]; accord *People v. Davis*, *supra*, 46 Cal.4th at p. 606 ["Evidence of prior crimes is probative of a person's intent on a later occasion"].) Thus, sufficient evidence supported defendant's conviction for threatening a public official in violation of section 76 as alleged in count 1.

## C. Criminal Threats

Defendant next asserts the evidence was insufficient to establish he threatened to commit a crime involving death or great bodily injury to the clerks in violation of section 422. We disagree.

### 1. *Applicable Law*

In order to prove a violation of section 422 for making a criminal threat, the prosecution must establish (1) the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person"; (2) the defendant made the threat "with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out"; (3) the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the threatened person's fear was "reasonabl[e]" under the circumstances. (§ 422, subd. (a); *People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

### 2. Analysis

Defendant asserts his conviction for making a criminal threat in violation of section 422 as alleged in count 2 was also unsupported by the evidence because the alleged threat was "not a genuine threat"; rather, his "rant was not directed at the two clerks—it was just an angry tirade, and the clerks overheard it." He argues there was no reason to believe he "would threaten to kill or injure [the clerks] specifically." He argues his case is similar to *In re Ricky T.* (2001) 87 Cal.App.4th 1132 because the surrounding circumstances showed his statements were an expression of anger and frustration rather than a threat of immediate criminal action. He also argues the evidence was insufficient to establish "there was an unequivocal, unconditional, immediate prospect of execution of a criminal threat." Finally, he asserts there was insufficient evidence the court clerks were in sustained fear for their safety. He argues the clerks' testimony they felt scared after hearing the threat and were "uneasy" or "upset" for the remainder of the day did not rise to the level of "sustained fear" within the ambit of the statute. We disagree with defendant's contentions and conclude sufficient evidence supports his conviction for making a criminal threat.

Substantial evidence supports the jury's conclusion defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person. As previously discussed, Robyn Baptista and Laura Parmenter both testified defendant said he was going to blow up the building—namely, the courthouse—that they were about to enter. The jury could reasonably conclude defendant's threat to blow up the building where Baptista and Parmenter worked and were about to enter was also a threat to inflict death or great bodily injury upon them. Though defendant denied threatening to blow up the building and denied he intended any of his statements as a threat, but rather said them as a joke, ""[c]onflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a

22.

determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.""" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Defendant contends that, as in *In re Ricky T.*, *supra*, 87 Cal.App.4th 1132, his statement did not convey gravity of purpose sufficient to justify a criminal threats conviction. In *Ricky T.*, a 16 year old minor left class to use the restroom and found the classroom door locked when he returned. (*Id.* at p. 1135.) He pounded on the door, and when his teacher opened it, the door hit the minor. (*Ibid.*) The minor became angry, cursed the teacher, and stated, "'I'm going to get you.'" (*Ibid.*) The teacher felt threatened and sent the minor to the school office, and the police were called the next day. (*Ibid.*) A week later, the minor stated to a police officer that he had told the teacher he was going to "'kick [the teacher's] ass.'" (*Id.* at p. 1136.) The minor was subsequently charged with and found to have violated section 422. (*In re Ricky T.*, *supra*, at pp. 1134–1135.)

The Court of Appeal reversed the juvenile court's finding. (*In re Ricky T.*, *supra*, 87 Cal.App.4th at pp. 1139–1141.) It held the minor's threats "lack[ed] credibility as indications of serious, deliberate statements of purpose." (*Id.* at p. 1137.) Rather, "[the minor']s intemperate, rude, and insolent remarks hardly suggest any gravity of purpose …. [¶] If surrounding circumstances within the meaning of section 422 can show whether a terrorist threat was made, absence of circumstances can also show that a terrorist threat was not made within the meaning of section 422." (*Id.* at pp. 1138–1139.) The court further noted there was no evidence the teacher felt fear beyond the time of the angry utterances. (*Id.* at p. 1140.) Accordingly, the court reversed the judgment, concluding the juvenile's statement "was an emotional response to an accident rather than a death threat that induced sustained fear." (*Ricky T.*, at p. 1141.) The court further noted it was "hesitant to change this school confrontation between a student and teacher to a

terrorist threat. Students who misbehave should be taught a lesson, but not, as in this case, a penal one." (*Ibid*.)

Unlike *In re Ricky T.*, the circumstances surrounding the statement in this case communicated gravity of purpose and immediate prospect of execution. Here, defendant's statements were not an emotional response to an accident in the moment. Rather, he actively drove by the courthouse and yelled angrily at the court clerks. His statement was unequivocal, unconditional, and specific, and, if it was carried out, the act—blowing up the building— would have (at a minimum) caused great bodily harm. The statement also conveyed an immediate prospect of execution in that defendant followed up the threat by telling the women to try to have a nice day despite the looming threat. (See *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348 [defendant stressed immediacy of threat by saying he would kill the victim "right now"].) An immediate ability to actually commit the threat was not necessary. (See *People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) Under these circumstances, we cannot conclude, as the *Ricky T.* court did, that defendant's threat to blow up the courthouse "was an emotional response to an accident rather than a death threat that induced sustained fear." (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1141.)

Indeed, substantial evidence also supports the jury's conclusion Baptista and Parmenter were in sustained fear as a result of defendant's threat. Section 422 does not define the term "sustained fear." However, some courts have defined sustained fear as meaning a "period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; accord, *People v. Wilson* (2015) 234 Cal.App.4th 193, 201; *In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140; *People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349 ["'Fifteen minutes of fear … is more than sufficient to constitute "sustained" fear for purposes of this element of section 422'"].)

Here, Baptista and Parmenter both stated defendant's threat scared them and they took the threat seriously. Baptista immediately reported the threat to the court deputies and remained upset and in fear for the rest of the day. Notably, defense counsel stated in closing argument there was no dispute the victims had "sustained fear, and that their fear was reasonable."

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to support defendant's conviction of count 2.

### III. The Court Did Not Prejudicially Err in Admitting Evidence of Defendant's Prior Bad Acts

Defendant next challenges the admission of evidence of his uncharged conduct as irrelevant and more prejudicial than probative. For the reasons that follow, we cannot conclude the court abused its discretion in admitting such evidence.

#### A. Relevant Procedural History

Before trial, the prosecutor argued for the admission of evidence of defendant's prior uncharged conduct in its case-in-chief pursuant to Evidence Code section 1101, subdivision (b) on the issues of motive and intent. The prosecutor asserted such evidence was admissible to establish defendant's specific intent regarding the charged violation of section 76 (count 1), that defendant "intended to threaten court staff, judicial staff." He explained he was "not trying to bring in all the evidence of any threats [defendant]'s ever made." Instead, he wanted to introduce evidence "of who [defendant] threatened, why he threatened them, and the fact that he had the intent to threaten them." The court held such evidence could not "come in in the case in chief without … having the main function of rebutting an inference of an innocent intent." The court later asked the parties to reserve arguments for when they hear "what the evidence actually is."

The issue was again raised during trial when the prosecutor sought to introduce evidence of other uncharged incidents. The court noted it did not think the alleged Evidence Code section 1101, subdivision (b) evidence was "relevant to motive," so it

focused on the issue of "specific intent." The court stated it would expect defendant's specific intent to be contested in this case, that is, whether defendant intended for his comments to be taken as a threat. The court noted defendant's previous threats were directed at specific people whereas the instant case arose from a general threat to the courthouse and everybody who worked there. The court concluded, however, there were more similarities than dissimilarities between the uncharged and charged conduct: "It all revolves around mistreatment of cases he's been subject to. It all revolves around the criminal justice system and the players inside the criminal justice system."

With regard to the Evidence Code section 352 analysis, the court weighed the evidence of each uncharged incident separately. First, the court considered evidence of the incident on the courtroom steps during which there was an angry confrontation between defendant and Deputy District Attorney Colby. During that incident, defendant said something like, "I'm going to get you." The court interpreted defendant's statement as "a threat to Mr. Colby," rather than a joke. Defendant also told Colby he was going to cost him his law license. The court found the relevance of that incident outweighed its potential for prejudice.

The court held admissible evidence of two other incidents during which defendant said "'Todd [McLean, who previously represented defendant,] better watch his back,'" "'That's how you get stabbed,'" and "'Todd better watch himself. He's going to get hurt and pay for what he did.'" The court concluded such comments were "sufficiently threatening enough to have relevance." The court excluded evidence of other incidents of uncharged conduct as more prejudicial than probative.

The court instructed the jury regarding the limited use of such evidence before it was admitted, stating:

> "The People will be allowed to present evidence of other behavior by the Defendant that was not charged in this case relating to attorney Todd McLean and to Deputy DA Travis Colby. You may consider this evidence

26.

only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the uncharged act.

"… A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, then you must disregard this evidence entirely.  If you decide that the Defendant committed the uncharged acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the Defendant acted with the specific intent that the statement in the charged offense be taken as a threat.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged acts and the charged offense.

"Do not consider this evidence for any other purpose, and do not conclude from this evidence that the Defendant has a bad character or is disposed of any crime.  If you conclude that the Defendant committed the uncharged act, that conclusion is only one factor to consider along with all the other evidence.  It's not sufficient by itself to prove that the Defendant is guilty of the charges in Count 1 and Count 2.  The People must still prove each of those charges beyond a reasonable doubt."

In closing argument the prosecutor reiterated the prior threat evidence involving McLean and Colby "is to be used for one purpose and one purpose only, and that is the Defendant's specific intent with regards to threatening in our case."

## B.    Standard of Review and Applicable Law

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts.  (Evid. Code, § 1101.)  Evidence Code section 1101, subdivision (a) states the general rule that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

Evidence Code section 1101, subdivision (b), however, authorizes the admission of evidence that "a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an

unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (*Ibid.*)

"[T]o be admitted, evidence of other crimes must be relevant to some material fact at issue, must have a tendency to prove that fact, and must not contravene other policies limiting admission, such as those contained in Evidence Code section 352." (*People v. Thompson* (1988) 45 Cal.3d 86, 109.) Evidence Code section 352 affords the trial court discretion to exclude such evidence if its probative value is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid.*)

A trial court's rulings under Evidence Code sections 1101 and 352 are reviewed for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

## C. Analysis

Defendant asserts the evidence of his uncharged conduct was not relevant to intent because his prior threats and harassing behavior were directed toward Todd McLean and Travis Colby rather than judges or court staff. He concedes his words to Colby and Cherie Mendenhall were clearly intended to "be taken as a threat." But defendant argues the incidents were "wholly dissimilar to the incoherent statements by [him] directed toward a group of women whom he did not recognize, even if he knew they were court employees by virtue of the fact they were in the vicinity of the courthouse." He argues if he had "only threatened to blow up the courthouse, rather than merging that short statement with his much lengthier diatribe, the prior threats might have been more relevant and admissible." He asserts the prejudicial impact of evidence of the uncharged acts outweighed its probative value. He contends such evidence was used by the People to prove defendant's motive to threaten the clerks, lessening their burden of proof. We find no abuse of discretion in the admission of this evidence.

"Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially. [Citations.] Consequently, a defendant's actions leading up to the crime may be relevant to prove his or her mental state and intentions at the time of the crime. [Citations.] [¶] ""'We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance" [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent. The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.'" [Citation.]' [Citation.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 355–356.) "The least degree of similarity is required to prove intent or mental state." (*Id.* at p. 355.)

Contrary to defendant's contention, the prior incidents were relevant to a disputed issue at trial—whether defendant harbored the requisite intent to be guilty of threatening a public official and making a criminal threat. (See Evid. Code, § 210 [evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Defendant's theory of the case was that he did not threaten to blow up the building and that the comments he made were a joke. In both prior incidents, as here, defendant was angry with the criminal justice system and threatened individuals who were a part of it. Accordingly, the prior incidents bore sufficient similarities to the charged offense to be relevant to the issue of intent. And evidence of these prior incidents was admissible pursuant to Evidence Code section 1101, subdivision (b) to establish defendant intended to threaten Baptista and Parmenter with his statements. Accordingly, the court did not abuse its discretion in concluding such evidence was relevant and admissible under Evidence Code section 1101, subdivision (b). (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [noting prior criminal act is admissible under Evid. Code, § 1101 to demonstrate defendant acted with requisite

29.

criminal intent in committing charged offense and to "'negative accident or inadvertence or self-defense or good faith or other innocent mental state'"].)

Nor was the probative value of such evidence "substantially outweighed" by the probability that its admission would "necessitate undue consumption of time" or "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" such that the court should have excluded it pursuant to Evidence Code section 352. The potential for prejudice from such evidence arises from its tendency to persuade jurors to infer defendant had a propensity to commit crime. But the risk of undue prejudice here was reduced by the fact evidence of the uncharged incidents was limited. Furthermore, the prior uncharged offenses were not more inflammatory than the charged offense, decreasing the possibility the jury's passions were inflamed by them. (See *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 825–826; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 205.) Additionally, the court instructed the jury on the limited purpose for which evidence of the prior threats was admitted, and we presume the jury followed that instruction. (See *People v. Orloff* (2016) 2 Cal.App.5th 947, 957.) On this record, the court did not abuse its discretion in failing to exclude such evidence pursuant to Evidence Code section 352. (See *People v. Garrett* (1994) 30 Cal.App.4th 962, 967 ["Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense"].)

Notably, defendant argues the prosecutor improperly used evidence of defendant's prior uncharged acts to prove motive; he asserts "the prosecutor's closing argument was geared entirely toward that theory." His claim is belied by the record. Though the prosecutor argued to the court such evidence was admissible on the issues of motive and intent when arguing for its admissibility, the court concluded the evidence would not "really be relevant to motive." Accordingly, the prosecutor never argued to the jury that evidence of defendant's prior acts should be considered relevant to defendant's motive in this case. Rather, the prosecutor expressly argued such evidence should only be

considered for one purpose—defendant's specific intent in this case. Thus, defendant's contention the prosecutor encouraged the jury to consider such evidence beyond its limited purpose is without merit.

For all these reasons, we reject defendant's contention.

## IV.    Counsel Was Not Ineffective for Failing to Seek Dismissal of Count 4

Defendant next asserts his counsel was ineffective for failing to move to dismiss the misdemeanor charge of disobeying a court order (count 4).

### A.    Relevant Procedural History

Following evidence at the preliminary hearing, defense counsel noted the restraining order against defendant protected three specific people, Deputy District Attorney Colby, and Deputy Public Defenders Todd McLean and Stephanie Jamieson. It further ordered defendant to stay 200 yards away from their places of employment and stated he is "not to approach the protected persons in, on, or about the premises of the Merced Superior Court." Defense counsel argued if defendant had business at the Merced Police Department, however, he was not barred from going there under the protective order simply because it is within 200 yards of the public defender's office. He asserted defendant was not intending to go to the public defender's office and had no contact with the protected parties; accordingly, defense counsel asked that defendant not be held to answer on the misdemeanor charge (count 4). The court noted it would be an affirmative defense to count 4 if defendant had a legitimate reason to go to the police department or courthouse for a case on calendar, but such evidence was not presented in this case. It concluded the prosecution had made a prima facie showing defendant approached the police department "after the events that happened in the courthouse with no other visible reason to be doing so legitimately."

In closing argument, with regard to count 4 for violation of a court order, defense counsel stated:

31.

"This whole charge, I'm not even arguing it. Okay? I fully concede that there's more than sufficient evidence to believe [defendant] is guilty of this crime. He was detained by the officers, the two deputies, right across the street from the Public Defender's Office, well within 200 yards. He's obviously familiar with where the Public Defender's Office is, having been there on several occasions in the past. I'm not contesting this charge at all."

"He did willfully violate the court order. He did go to the Public Defender's Office or go across the street, which he knows he's not supposed to do, and that's what he thinks is just a cite-and-release misdemeanor offense. Okay?"

## B.    Analysis

Defendant asserts there could be no explanation for his counsel's failure to move for dismissal of the restraining order charge after the court gave counsel opportunities to do so and the court advised it "did not consider [defendant's] conduct to be violative of the restraining order." He further contends "it was grossly prejudicial for counsel to advise the jurors to find [him] guilty of violating the order." The People respond defense counsel argued defendant should not be held to answer on count 4 at the conclusion of the preliminary hearing; that request was denied by the court. They assert whether to bring a motion for acquittal is a tactical decision and, in any event, it had no merit. They further assert it is not reasonably probable the outcome of the case would have been different had his counsel made the motion. We agree with the People.

Here, the record "does not shed light on why counsel acted or failed to act in the challenged manner." (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212; accord, *People v. Silvey* (1997) 58 Cal.App.4th 1320, 1329.) That is, defense counsel was never asked to explain why he did not move to dismiss count 4 after the preliminary hearing or the close of trial evidence. And we cannot find "there simply can be no satisfactory explanation" for his failure to move to acquit on that count. (*People v. Scott*, *supra*, at p. 1212.) Rather here, the court already stated in the preliminary hearing the prosecutor presented sufficient evidence to establish a prima facie case with regard to this count. It also expressed its view the evidence did not show defendant had a legitimate reason to go to

the police department that day, particularly in light of his previous actions at the courthouse. Though defendant testified at trial he was going to the police station with some legal papers to get "guidance," counsel could have reasonably concluded a motion to dismiss this count would have been futile in light of the court's earlier representations. (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"]; *People v. Freeman* (1994) 8 Cal.4th 450, 509 ["Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record"].) Accordingly, we cannot conclude defendant has established his counsel was ineffective on that basis. (See *People v. Gamache* (2010) 48 Cal.4th 347, 378 [proponent has burden of affirmatively showing ineffective assistance; "in the absence of evidence" of deficient performance, the claim fails].)

We also cannot conclude defendant has established he was prejudiced by his counsel's failure to move to dismiss that count at trial. "When a trial court rules on a motion for a judgment of acquittal under section 1118.1, the standard the trial court must apply is the same as what the appellate court applies when reviewing the sufficiency of the evidence supporting conviction. A section 1118.1 motion is used to cull the ""few instances in which the prosecution fails to make even a prima facie case."""" (*People v. Wilson* (2021) 11 Cal.5th 259, 301.)

And here, we cannot conclude that if defense counsel had moved to acquit defendant of count 4 it was reasonably probable such a motion would have been granted. Rather, as the court already concluded, there was sufficient evidence to support a conclusion defendant disobeyed a court order in violation of section 166, subdivision (a)(4). "That a different trier of fact could have concluded otherwise does not mean the verdict is not supported by the evidence." (*People v. Wilson*, *supra*, 11 Cal.5th at p. 302.)

We also conclude defendant has failed to show there could be no possible tactical reason his counsel would concede guilt on count 4 in closing argument. (See *People v.*

33.

*Freeman*, *supra*, 8 Cal.4th at p. 498 ["The decision of how to argue to the jury after the presentation of evidence is inherently tactical"].) Consequently, defendant must overcome the strong presumption that counsel's actions were sound trial strategy under the circumstances prevailing at trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) Defendant has failed to overcome this presumption.

The record does not reflect counsel's reasoning for conceding defendant's guilt on count 4 during closing argument. And there is a plausible tactical justification for defense counsel's actions. "Recognizing the importance of maintaining credibility before the jury, [the California Supreme Court has] repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt." (*People v. Freeman*, *supra*, 8 Cal.4th at p. 498.) "[G]ood trial tactics often demand complete candor with the jury, and … in light of the weight of the evidence incriminating a defendant, an attorney may be more realistic and effective by avoiding sweeping declarations of his or her client's innocence." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1060–1061.) Here, defendant himself admitted he believed he had committed a cite-and-release crime when the police stopped him. Defendant's admission, coupled with the other evidence in support of this count, could lead competent counsel to deduce a guilty verdict as to count 4 was a foregone conclusion and that by focusing its defense against certain, more vulnerable counts, counsel could retain some credibility with the jury. (See *People v. Carter* (2005) 36 Cal.4th 1114, 1190; accord, *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1169 [counsel's effective concession of guilt on some charges during closing argument "appears to have been a calculated strategy to concede the near inevitable outcome on certain charges in order to gain credibility with the jury and pursue acquittal on charges where the evidence was not as strong"]; see generally *People v. Gaul-Alexander* (1995) 32 Cal.App.4th 735, 749 ["'Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an

34.

overall defense strategy"].) Thus, the record fails to show defense counsel was ineffective on this basis.

Accordingly, we reject defendant's contention.

## V. Defendant's Prison Prior Enhancement Must Be Stricken

Defendant next contends his one-year prior prison term enhancement imposed pursuant to section 667.5, former subdivision (b) must be stricken under Senate Bill 136, which was signed into law on October 8, 2019, and became effective on January 1, 2020. The People concede Senate Bill 136 applies retroactively to this case and the prison prior enhancement should be stricken. (See *In re Estrada* (1965) 63 Cal.2d 740, 742.) On remand, we direct the trial court to strike this enhancement.

At the time defendant was charged, convicted, and sentenced, section 667.5, former subdivision (b) provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony …."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill 136. Effective January 1, 2020, subdivision (b) of section 667.5 provides, in pertinent part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code …." (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1.)

In other words, a prior prison term enhancement will only apply if a defendant served the prior prison term for a qualifying "sexually violent offense." The Legislature did not expressly declare or in any way indicate it did not intend Senate Bill 136 to apply

retroactively. "When an amendatory statute … lessens the punishment for a crime …, it is reasonable for courts to infer, absent evidence to the contrary and as a matter of statutory construction, that the Legislature intended the amendatory statute to retroactively apply to the fullest extent constitutionally permissible—that is, to all cases not final when the statute becomes effective. [Citations.]" (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972.)

Accordingly, we conclude Senate Bill 136 applies retroactively to this case and, because defendant's prior prison term was not served for a sexually violent offense, the related enhancement imposed pursuant to section 667.5, former subdivision (b) is now unauthorized and must be stricken on remand.[5]

## VI.    Defendant Is Entitled to Resentencing Pursuant to Senate Bill 567

We requested supplemental briefing on the effect, if any, of the recent passage of Senate Bill 567 on the judgment. We now agree with defendant he is entitled to remand and a resentencing hearing pursuant to this new legislation.

### A.    Relevant Procedural History

The court sentenced defendant to the upper term of three years on count 2, plus one additional year for the prior prison term enhancement; it also sentenced defendant to the upper term of three years on count 1 but stayed that sentence pursuant to section 654. In selecting the upper terms for counts 1 and 2, the court discussed the following factors:

> "The factors in aggravation that I believe are relevant would be [California Rules of Court, rule] 4.42l(b)(1), … and that is the factor that has to do with the fact that the Defendant has engaged in violent conduct that indicates he's a serious danger to society. I do believe based on the facts that that is an applicable factor.

---

[5]While defendant's appeal was pending, the Legislature enacted section 1171.1, which further declares invalid any sentence enhancement imposed prior to January 1, 2020, pursuant to former subdivision (b) of section 667.5, except for those enhancements imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of section 6600 of the Welfare and Institutions Code, and provides for resentencing pursuant to that section.

"[California Rules of Court, rule 4.421](b)(2), I don't know if that is necessarily all that relevant in this particular case. Even the Probation Department didn't characterize his record as numerous prior convictions. It might be that they're somewhat increasing in seriousness, but the prior ones were fairly serious as well, too. So I don't know that (b)(2) is a factor I really would include in my considerations.

"[California Rules of Court, rule 4.]42l(b)(3) seems to be applicable to me, that he served a prior term in prison, and, more importantly, that that was served because of his poor performance on Probation, and the attempts that were made at that time to avoid a prison commitment.

"And [California Rules of Court, rule 4.421](b)(5) I believe would be appropriate as well, too, and the same thing, prior performance on Probation was unsatisfactory.

"I would find that those factors in aggravation do outweigh the factors in mitigation, including the other factors that were mentioned on [defendant's] behalf as well, too.

"So based on that, I am going to go ahead and select the aggravated term."

## B. Senate Bill 567

At the time of defendant's sentencing on September 19, 2018, section 1170 provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice." In doing so, the court could rely on "the record in the case, the probation officer's report, other reports, … and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (Former § 1170, subd. (b).)

Thereafter, Senate Bill 567 amended section 1170, affecting a trial court's sentencing discretion, including its ability to impose the upper term for a conviction. (Stats. 2021, ch. 731, § 1.3.) The legislation limits the trial court's ability to impose the upper term unless certain circumstances have been stipulated to by the defendant or

37.

found true beyond a reasonable doubt.  (*Ibid*.)  Effective January 1, 2022, section 1170, subdivision (b) provides as follows, in pertinent part:

"(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

"(2) *The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.*  Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements.  The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

"(3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.  This paragraph does not apply to enhancements imposed on prior convictions.

"(4) At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts.  The court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.

"(5) The court shall set forth on the record the facts and reasons for choosing the sentence imposed.  The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law.  A term of imprisonment shall not be specified if imposition of sentence is suspended."  (§ 1170, subd. (b), italics added.)

## C. Analysis

The parties agree Senate Bill 567 is retroactive, but disagree regarding whether defendant is entitled to relief under the new legislation. Defendant asserts the "aggravating factors selected by the court with respect to Rule 4.421(b)(1)—*violent conduct*—were neither applicable to the conduct alleged in the present case, nor to [defendant's] prior criminal history." He further contends the aggravating factors cited by the trial court "were neither stipulated to by [him], nor found true beyond a reasonable doubt by the jury at trial." The People argue remand is unnecessary because the trial court relied on defendant's prior criminal history in imposing the upper term. They rely upon *People v. Munoz* (2007) 155 Cal.App.4th 160 in arguing defendant "effectively stipulated to the facts underlying his recidivist criminal history"; thus, "the second aggravating factor found by the trial court adequately supported imposing the upper term in [defendant's] case." We conclude remand is appropriate.

First, we agree with the parties Senate Bill 567 applies retroactively to defendant. Under *In re Estrada*, *supra*, 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) Because defendant's case is not final and nothing in Senate Bill 567 suggests legislative intent that it only apply prospectively, the amended version of section 1170, subdivision (b), which became effective on January 1, 2022, applies retroactively to this case. (See, e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 627–630; *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308.)

We further agree with the People the court could consider, as it did, defendant's prior convictions in imposing the upper term pursuant to the express language of section

1170, subdivision (b)(3).[6]  However, in imposing the upper term, the court also considered that defendant engaged in "violent" conduct that indicated he was a "serious danger to society"—a fact not stipulated to by defendant or found true beyond a reasonable doubt by a trier of fact.  And whether defendant's conduct underlying his present and prior convictions was "violent" was a fact in dispute.

Indeed, at the sentencing hearing defense counsel took issue with many of the circumstances in aggravation listed in the probation report and argued the aggravated term was not appropriate.  Defense counsel expressly challenged the characterization of defendant as "someone who is a serious danger to society based on his violent conduct." She argued the instant case did not involve great violence or great bodily harm.  She further asserted defendant's two priors for stalking and felony vandalism were not violent crimes and none of defendant's alleged "continuous threatening behaviors" resulted in actual violence.[7]  Thus, defendant did not stipulate to this circumstance in aggravation, which the court relied upon in imposing an upper term, nor was this factor found true beyond a reasonable doubt by a trier of fact.

---

[6]The court further considered that defendant's prior prison term "was served because of his poor performance on [p]robation, and the attempts that were made at that time to avoid a prison commitment."

[7]Defense counsel admitted defendant's section 422 conviction was more serious than his prior offenses, but argued "the actual conduct that happened four years ago … does not seem less serious or more serious necessarily" than the present offense.  She further noted additional factors for the court to consider, including that in his prior cases, when defendant was placed on probation he "was given Mental Health Court, and there are mental health evaluations prior to this or relating to that case that … indicate that [defendant] may have some mental health issues," which is a mitigating circumstance.  She also disagreed with the probation report that anything about the case established the victims were "particularly vulnerable."  She also challenged the probation report's statement that defendant "'threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process.'"  Defense counsel further stated it was "debatable" whether the crime "was carried out to indicate plan and sophistication or professionalism" as stated in the probation report.  She also asserted defendant did not have a "serious record" with numerous convictions.

40.

We conclude *People v. Munoz*, relied upon by the People, is inapposite. In *People v. Munoz*, *supra*, 155 Cal.App.4th 160, the defendant was charged with assault with a deadly weapon with a gang enhancement, felony vandalism, attempted murder with a special allegation he personally inflicted great bodily injury during the offense, two more counts of attempted murder with gang enhancements, and shooting at an occupied vehicle with a gang enhancement. (*Id.* at p. 165.) The defendant pleaded no contest to one count of attempted murder and admitted he had personally used a firearm in the commission of the offense. (*Ibid.*) In exchange for his plea, all the remaining counts and enhancements were dismissed. (*Ibid.*) Two other domestic violence cases were also dismissed as part of the plea agreement; these cases involved charges of misdemeanor battery, making criminal threats, assault with a deadly weapon by means likely to produce great bodily injury, and cutting a utility line. (*Ibid.*)

The plea agreement in *Munoz* specifically included a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. (*People v. Munoz*, *supra*, 155 Cal.App.4th at p. 165.) Pursuant to the waiver, the defendant stipulated "'the sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence.'" (*Id.* at p. 167, capitalization omitted.) The trial court sentenced the defendant to an upper term of nine years' imprisonment on the attempted murder charge and the upper term of 10 years for the firearm enhancement. (*Id.* at p. 165.) In imposing the upper term, the court found the circumstances in aggravation outweighed those in mitigation. (*Ibid.*) In aggravation, the court considered that the crime involved "great violence and great bodily injury," and that the defendant had a history of violence and was "increasingly dangerous." (*Ibid.*) The defendant challenged the imposition of the upper term, arguing it violated his right to a jury trial and proof beyond a reasonable doubt as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466, *Blakely v. Washington* (2004) 542 U.S. 296, and *Cunningham v. California*

41.

(2007) 549 U.S. 270.) The *Munoz* court held that by signing the *Harvey* waiver, "defendant effectively 'stipulate[d] to the relevant facts' necessary to impose the upper term, thereby waiving his right to have a jury trial and proof beyond a reasonable doubt on those facts." (*People v. Munoz*, *supra*, at p. 168, quoting *Blakely*, *supra*, at p. 310.)

Here, unlike in *Munoz*, defendant did not sign a *Harvey* waiver or otherwise admit to engaging in violent conduct. And because whether defendant engaged in violent conduct was a fact in dispute that was not stipulated to by defendant or otherwise found true beyond a reasonable doubt by a trier of fact, *Munoz* is distinguishable.

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

We cannot conclude the record before us clearly indicates the court would have still imposed the upper term absent its consideration of this disputed factor. We also cannot conclude, as the People contend, that remand for resentencing is unnecessary because the jury would have found this aggravating circumstance true beyond a reasonable doubt. That is, it is possible a trier of fact could disagree as to whether defendant's current conviction for making a criminal threat, and his priors for vandalism and stalking, involved "violent conduct."

Because the record before us does not clearly establish the court would have imposed the same sentence without considering that defendant had engaged in violent conduct, we agree with defendant that remand is appropriate so the trial court may

exercise its informed discretion in sentencing defendant in line with the new legislative changes.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 896.)

## DISPOSITION

The matter is remanded for a resentencing hearing.  The court is directed to strike the prior prison enhancement.  We express no opinion, however, on how the court should exercise its sentencing discretion under Senate Bill 567.  In all other respects the judgment is affirmed.


PEÑA, J.

WE CONCUR:


FRANSON, Acting P. J.


SNAUFFER, J.